## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| ROBYN PFERSHY AND MATTHEW PFERSHY, as Next Friend on behalf of their minor daughter, O.P., and in their individual capacities, | ) ) ) ) ) |
| Plaintiffs | ) **Jury Demanded** ) |
| v. | ) Case No. 23-cv-03515 ) |
| O'FALLON TOWNSHIP HIGH SCHOOL DISTRICT 203 | ) **JURY TRIAL DEMANDED** ) ) |
| Defendant. | ) ) ) |

## FIRST AMENDED COMPLAINT

Plaintiffs Robyn Pfershy ("**Robyn**") and Matt Pfershy ("**Matthew**") (collectively "**Parents**"), individually and on behalf of their minor child, O.P. ("**O.P.**" or "**Student**") (collectively "**Plaintiffs**"), through their attorneys, pursuant to the Individuals with Disabilities Education Act ("**IDEA**"), 20 U.S.C. § 1400 *et seq.*, Section 504 of the Rehabilitation Act ("**Section 504**"), 29 U.S.C. § 794 *et seq.*, the Americans With Disabilities Act of 1990 ("**ADA**"), 42 U.S.C. §§ 12101 et seq., and the Illinois Human Rights Act ("**IHRA**"), 775 ILCS 5/1-101 *et seq.* for her complaint regarding disability discrimination against Defendant O'Fallon Township High School District 203 ("**District 203**") and seeking reversal of a special education hearing decision made by Illinois State Board of Education ("**ISBE**"), as well as for an award of monetary damages, attorney's fees and costs, states as follows:

## JURISDICTION AND VENUE

1.     This Court has jurisdiction over this controversy pursuant to 28 U.S.C. § 1331, 20 U.S.C. § 1415(i)(3), 28 U.S.C. §§ 1331 and 1343, and 42 U.S.C. § 12117(a).

2.     This court has supplemental jurisdiction over this controversy for the IHRA claims

pursuant to 28 U.S.C. § 1367.

3.    Declaratory relief is authorized by 28 U.S.C. §§ 2201 and 2202.

4.    Venue is properly located in this District pursuant to 28 U.S.C. § 1391 because a substantial part of the events and omissions giving rise to this complaint occurred within this District.

## **PARTIES**

5.    Plaintiff O.P. is a fifteen-year-old girl who resides with her parents, Robyn and Matthew, in O'Fallon, Illinois.

6.    O.P. is a person with multiple disabilities. She has been diagnosed with hyperthyroidism, Graves' Disease, Attention Deficit Hyperactivity Disorder ("***ADHD***"), anxiety, and hearing loss in her left ear. She uses an assistive device for her hearing loss, referred to interchangeably as an FM or DM system.

7.    Plaintiff O.P. is a person entitled to the protections of 42 U.S.C. § 12111(8).

8.    Additionally, O.P. is a student as defined by 775 ILCS 5/5A-102(C).

9.    District 203 is the governmental unit responsible for administering public special education schools, programs, and services within the area it serves and is the "local education agency" as defined by 20 U.S.C. § 1401(19).

10.    District 203 receives federal financial assistance and is thus a covered entity under Section 504 of the Rehabilitation Act, 29 U.S.C. § 794.

11.    District 203 is obligated under federal and state law to provide a "free and appropriate public education" to all children with disabilities who reside within its educational boundaries, including Plaintiff O.P. The President of the Board of Education of District 203 is Rob Brown, and its principal place of business is 600 Smiley St., O'Fallon, IL 62269.

2

12.    District 203 is an institution of elementary, secondary, or higher education as defined by 775 ILCS 5/5A-102(A).

## STATEMENT OF FACTS COMMON TO ALL COUNTS

13.    O.P. was born very prematurely. She was hospitalized for months in the NICU. She suffered lengthy intubation and mechanical ventilation as a newborn and now suffers from chronic lung scarring, which makes extreme exertion impossible or very uncomfortable.

14.    O.P. suffers from hyperthyroidism, Graves' Disease, Attention Deficit Hyperactivity Disorder ("***ADHD***"), anxiety, and hearing loss in her left ear. District 203 learned of these conditions when O.P. first enrolled in school.

15.    O.P. has a twin sister, A.P., who has many of the same disabilities as O.P. District 203 learned about these conditions when A.P. first enrolled in school.

16.    According to O.P.'s audiology evaluation, performed by O'Fallon School District 90's ("***District 90***") audiologist on September 11, 2019, O.P. can understand 28% of spoken words in her right ear and 36% of spoken words in her left ear when attempting to hear in a noisy environment. The report also stated, "A significant benefit was noted when the student was using the FM/DM system."

17.    O.P. has continually used a DM during classroom instruction since third grade.

18.    O.P. had an IEP and Section 504 Plan in 7th grade (2020-2021 school year) in District 90, which addressed her hearing loss and other disabilities.

19.    Parents homeschooled O.P. during 8th grade (2021-2022 school year) due to the risk of COVID-19-related illness exacerbating her chronic lung scarring and other conditions. O.P.'s parents bought the books and materials used by the other 8th graders and followed the same curriculum as District 90.

20.     O.P.'s family began preparing for her to return to in-person schooling for the 2022-2023 school year in March 2022. District 203, District 90, and the O.P.'s parents participated in an IEP meeting on March 28, 2022, creating the March 28, 2022, IEP ("***The March 28, 2022 IEP***").

21.     The March 28, 2022, IEP included two goals: (1) "[O.P.] will identify factors that create stress and affect successful performance in school," and (2) "[O.P.] will apply the following skills to gain further information about post-secondary careers, education, and independent living."

22.     The March 28, 2022, IEP also provided O.P. with 275 minutes per week of special education instruction in Resource Study Skills.

23.     The March 28, 2022, IEP provided O.P. fifteen (15) minutes of audiology services per semester and fifteen (15) minutes of Social Work Services per quarter.

24.     The March 28, 2022, IEP entitled O.P. to preferential seating in the classroom near the teacher with her right ear toward the teacher, along with the use of the DM system.

25.     Similarly, The March 28, 2022 IEP provided O.P. with extended time for test taking, an alternate location to take tests and quizzes as needed, use of noise-canceling headphones, additional time between passing periods to care for her DM system as needed, use of a calculator, a schedule that places math class in the morning when O.P.'s ADHD medication is most effective, and P.E. class adaptions as needed to accommodate her Graves' Disease and the ability to drink water as needed.

26.     On May 5, 2022, District 90's audiologist emailed District 203's audiologist, Kristen Chumbley ("***Chumbley***"), received an email from District 90's audiologist informing her that O.P. was expected to attend high school and needed a new DM system.

27.     District 203 ordered O.P.'s DM system sometime in July 2022.

28.     O.P.'s first day of 9th grade was on August 11, 2022.

29.     On O.P.'s first day of 9th grade, District 203 did not have a DM system for O.P.

30.     The DM system did not arrive at O.P.'s high school until August 15, 2022.

31.     District 203's audiologist programmed the DM system on August 17, 2022.

32.     O.P. finally received her DM system on August 19, 2022 –seven (7) days after school began.

33.     Allegedly, a system part of O.P.'s DM system was back ordered, causing the delay in receipt of the DM system. However, District 203 never informed O.P.'s parents or her IEP team that her DM system was backordered, would not be ready for her first day of high school, or that she went without the DM system for seven (7) days.

34.     During the seven days at the beginning of the school year, when District 203 did not have a DM system for O.P., O.P. experienced significant difficulties hearing her teachers' lectures, causing O.P. issues understanding the concepts.

35.     Due to O.P.'s graves' disease and chronic lung damage, O.P. struggles with running, especially on hot days.

36.     On multiple occasions, Plaintiff O.P. and her sister, who also has chronic lung damage, informed their physical education teacher, Ms. Walsh ("**Walsh**"), regarding difficulty running in the heat.

37.     On multiple occasions during hot days, O.P. and her sister walked or jogged instead of running due to chronic lung damage and Graves' disease.

38.     Walsh gave O.P. and her sister grades of zero on those days because they jogged or walked, which humiliated O.P. and her sister.

39.     There were multiple other instances where Walsh denied O.P. the ability to fill her water bottle during class.

40.     Robyn and Matt contacted District 203 regarding these failures to accommodate.

41.     District 203 told parents that O.P. needed to advocate for herself.

42.     Parents informed District 203 that O.P. is not a good advocate for herself due to her anxiety.

43.     O.P.'s algebra teacher Colleen Becker ("***Becker***"), was a strict teacher who slammed down books and yelled at students, which increased O.P.'s anxiety.

44.     On one occasion, Becker threatened to give the entire class pink slips (demerits) because some students did not finish their homework. This threat exacerbated O.P.'s anxiety even though O.P. completed her homework.

45.     District 203 never properly trained Becker on using O.P.'s DM system, despite O.P.'s IEP requiring such training.

46.     Becker made her dislike of O.P.'s DM system known by making comments in front of other students, including but not limited to:

      a.     "I don't want to see [the DM system] ever again.:

      b.     "Do I not speak loud enough for you?"

47.     Becker did not allow O.P. to leave her DM system in the classroom overnight. Instead, O.P. had to leave it in the nurse's office, which sometimes caused her to be late for class.

48.     On November 1, 2022, in response to Chumbley's check-in on O.P.'s usage of the DM system, Becker reported: "(O.P.) had not had FM system in class for past week or so, she said she benefits from it though."

49.     On November 7, 2022, District 203's nurse noted that O.P. reported to District 203's nurse's office that she had issues with her DM/FM System connecting.

50.     O.P. did not have her DM/FM system for approximately four days.

51.    District 203 never notified parents regarding the DM/FM system issue.

52.    District 203 did not investigate why O.P. had no DM/FM system during that period.

53.    On November 10, 2022, District 203 and the O.P.'s parents participated in an IEP meeting, creating the November 10, 2022, IEP ("***The November 10, 2022 IEP***")

54.    The November 10, 2022, IEP provides: "BASSC supplied DM system during classroom instruction" and states the district-supplied DM system was to be used in all academic classes, in particular "[u]se of a remote microphone hearing assistance technology (DM) system."

55.    The November 10, 2022, IEP also provides additional time between passing periods and allows O.P. to leave class early to "take care of DM system as needed."

56.    During the November 10, 2022, IEP meeting, Parents attempted to transfer O.P. to another section of advanced algebra taught by a different instructor. District 203 refused this request.

57.    The November 2022 IEP noted test anxiety, but District 203 did not address this issue.

58.    Becker quit wearing the DM system microphone in early February 2023.

59.    On or about February 8, 2023, O.P. texted Robyn, informing her that she could not hear well in advanced algebra class because Becker had removed the microphone.

60.    O.P. later sent similar text messages informing her mother that Becker had refused to wear the DM system microphone on several subsequent occasions.

61.    Instead of wearing the DM system microphone around her neck, Becker sometimes placed it on a cart in the front of the room during the lecture.

62.    When the DM system microphone was on the cart, the outside noise of other children made it difficult for O.P. to hear and concentrate.

63.    Due to her hearing loss, O.P. told Becker that putting the microphone on a cart instead of wearing it around her neck made it difficult for O.P. to hear.

64.    Contemporaneous text messages O.P. sent to her mother indicate Becker continued to refuse to wear the microphone properly even after O.P. told her she needed Becker to wear it around her neck for O.P. to hear classroom instruction.

65.    On February 13, 2023, Olivia's text message to her mother indicated that Ms. Becker only wore the microphone in class for 5 minutes.

66.    According to District 203's academic calendar, Olivia missed at least four or five days of instruction when the DM system was not used.

67.    Becker gave no notice to Olivia's IEP Team of her refusal to wear the DM microphone.

68.    District 203 never told O.P.'s parents about Becker's failure to wear the DM system microphone.

69.    In February 2023, after O.P.'s parents learned about Becker's refusal to wear the DM system microphone, they asked that administrators require Becker to wear the microphone, but District 203 denied this request.

70.    In February 2023, after O.P.'s parents learned about Becker's refusal to wear the DM system microphone, they again requested that O.P. be transferred to a different section of advanced algebra.

71.    During the February 2023 meeting, Parents told District 203 that O.P. was anxious, upset, unable to sleep, and not eating.

72.    District 203 told Parents it could not transfer O.P. to another teacher for advanced algebra, only into the introduction to algebra class.

73.    During the February 2023 meeting, District 203's representatives demeaned the fact
that O.P. complained to her parents about Becker's treatment, making comments such as:

    a.    "[Olivia] will have to learn to deal with people she doesn't like throughout
her life;"

    b.    this experience would help prepare her for college and

    c.    "She doesn't need to be running home to Mommy and Daddy every time
she gets upset."

74.    In fear of their daughter's anxiety and due to Becker's refusal to wear the DM
system, Parents acquiesced to the District's only recommendation to remediate the issue: to O.P.
transfer to Introduction to Algebra.

75.    As a direct and proximate result of District 203's conduct, O.P. has suffered
damage, injuries, pain and suffering, inconvenience, emotional distress, and impairment of the
quality of life.

76.    On or about March 22, 2023, O.P.'s parents filed a due process complaint with the
Illinois State Board of Education.

77.    On May 11, 2023, Plaintiffs O.P., Matt, and Robyn timely filed charges of
Discrimination with the Illinois Department on Human Rights.

78.    From September 13-15, 2023, an independent hearing officer ("*IHO*") appointed
by the Illinois State Board of Education conducted a three-day due process hearing remotely via
Zoom.

79.    During the hearing, Plaintiffs provided testimony and records supporting the
following:

    a.    District 203 did not provide the DM system for a few weeks at the beginning

of the 2022-2023 school year;

b.    There was a period in November 2022 where O.P. did not use her DM system, and District 203 did not inform the family to see if something needed to be amended;

c.    District 203 failed O.P. because she could not run due to her Graves' Disease and Chronic Lung Damage;

d.    District 203 allowed one of its teachers, Becker, to belittle and intimidate O.P. and her usage of the DM System;

e.    District 203, knowing O.P. had extreme anxiety and difficulties self-advocating, kept her in an environment where she was anxious and set up for failure;

f.    Instead of switching O.P. to a new teacher for the material, District 203 moved O.P. to a lesser class;

g.    O.P. and Robyn testified that she had a very difficult freshman year because of the failure of District 203 to provide O.P. with the necessary accommodations as provided by her IEP; and

h.    O.P.'s participation in her physical education and advanced algebra classes led to significant increases in her level of anxiety and a decline in her physical and mental health.

80.    During the hearing, based on Plaintiffs' evidence, Plaintiffs proved the following:

a.    District 203 failed to provide necessary IEP accommodations to Student during her 2022-2023 school year, such as by failing to provide Student's DM system at the beginning of the school year or by allowing Student's

Advanced Math class instructor to refuse to wear the microphone that was a part of the Student's DM system, or by effectively denying Student the opportunity to use a calculator during testing, all without any notice to Parents, result in a denial of FAPE, in violation of 20 U.S.C. § 1412(a) and 105 ILCS 14-8.02(d).

b.     District 203 violated Title II of the Americans with Disabilities Act, 42 U.S.C. § 12132, 34 C.F.R. § 35.130, the Illinois Human Rights Act, 775 ILCS 5/1-101, and Section 504 of the Rehabilitation Act, 29 U.S.C. § 794(a), when District 203 disregarded Student's need for accommodations, such as when District 203 ignored Student's request for accommodation in her Advance Math class, thereby denying Student the benefits of programs of a public entity.

81.     On September 29, 2023, IHO entered her Final Determination and Order ("*September 29 Order*"). A copy of this decision is attached hereto as Exhibit A and incorporated herein by reference.

82.     The IHO found:

a.     O.P.'s DM system was provided within ten (10) school days.

b.     O.P. was not denied additional time to care for her DM system between passing periods.

c.      Becker wore the DM system except during a period when she suffered neck pain.

d.     Becker put the microphone on a podium during daily sessions of individualized instruction and occasionally failed to turn the system back

11

on as she was wrapping up at the end of class.

    e.    There is no evidence that O.P. lost sleep, weight, or appetite due to increased anxiety caused by District 203's actions.

    f.    O.P. was placed in an advanced class that was not suited to her math background, and O.P. did not like her math teacher or her methods.

    g.    Any academic regression student suffered in attaining a C-minus in advanced algebra was due to her test anxiety and failure to fully grasp the material.

83.    The IHO found against Plaintiff and in favor of District 203 as follows:

    a.    Under Illinois law, the district need only provide written notice to parents that a student is not receiving a service that the student needs in order to receive a free, appropriate public education if the student has gone without that service for ten (10) school days.

    b.    District 203 complied with Illinois law by providing the DM system within ten (10) school days.

    c.    Parents' allegation that the delay in providing the DM system caused O.P. to regress academically is "unfounded," seemingly because O.P.'s complaints regarding the DM system were limited to advanced algebra class.

    d.    An IEP is not a contract, and a school district's deviations from an IEP are not *per se* violations of the IDEA.

    e.    There were no procedural inadequacies that caused a deprivation of educational benefit with respect to O.P.'s math class.

      f.      There were no procedural inadequacies that caused a deprivation of educational benefit with respect to O.P.'s advanced algebra class.

84.     The evidence did not support the final order of the IHO and is inconsistent with state and federal law in the following respects:

      a.     The order erroneously relies on Illinois state law, which allows a school district to deprive a student of services to which they are entitled for up to ten (10) days.

      b.     This Illinois state law, if interpreted and applied in this manner, conflicts with federal law, namely the IDEA.

      c.     Further, the decision disregards the ruling and standard of proof of *M.C. v. Antelope Valley Union High School District*, 852 F.3d 840 (9th Cir. 2017), which held that under circumstances where the district commits a procedural violation of the IDEA and a parent is unaware of what services are being offered to the student, it is impossible for the parent to determine whether those services were substantively reasonable and "[i]n such circumstances, the burden shifts to the school district to show that the services the student actually received were substantively reasonable."

85.     The final order of the IHO was not supported by the evidence and is inconsistent with the IDEA and Illinois law in the following respects:

      a.     The order erroneously determined that District 203's unilateral changing of O.P.'s IEP, preventing her from using her DM/FM system at the beginning of the school year, was appropriate and not a violation of FAPE.

      b.     The order erroneously determined that District 203's unilateral changing of

O.P.'s IEP by allowing Becker to remove the DM system during class was appropriate and not a violation of FAPE.

c.    The order erroneously determined that District 203's prevention of the accommodation to move O.P. to a different advanced algebra teacher during the first hour who did not slam books, threaten and scream at students, or make derogatory comments regarding the DM/FM system, which exacerbated O.P.'s anxiety was not a denial of FAPE.

d.    The order erroneously determined that District 203's failure to allow O.P. to use a water bottle and Walsh's failure of O.P. for not running when she could not run due to her chronic lung damage, asthma and Graves' disease were not a denial of FAPE.

e.    The order erroneously determined that District 203's prevention of allowing O.P. to store her DM system in Becker's classroom, thus marking O.P. as tardy, was not a denial of FAPE.

f.    The order erroneously determined that District 203's failure to train faculty and staff on usage of the DM/FM system was not a denial of FAPE.

86.    For reasons unknown, the IHO did not obtain a copy of the transcript of the hearing prior to the issuance of her order.

87.    Because the IHO did not obtain a copy of the transcript, her order recites her recollection of the testimony at the hearing, some of which is inconsistent with Plaintiffs' recollection of the testimony, including but not limited to where the IHO states the teacher did not refuse to wear the microphone as that is not the testimony provided by Becker at the due process hearing and that was not what the Plaintiffs' complained about about in alter meetings.

14

Furthermore, Plaintiffs testified that District 203 refused to direct the teacher to wear the microphone.

88.     District 203 has acted under the color of state law and engaged in the discriminatory and illegal practices described herein deliberately and with deliberate indifference to O.P.'s rights.

## COUNT ONE: INDIVIDUALS WITH DISABILITIES EDUCATION ACT

89.     Plaintiffs reallege and incorporate herein by reference the foregoing paragraphs of this Complaint.

90.     O.P. has exhausted her administrative remedies.

91.     District 203's actions described above denied O.P. a free and appropriate public education in violation of the IDEA, 20 U.S.C. § 1412(a)(1), and O.P. is a person aggrieved by the final decision of the IHO.

92.     ISBE is an administrative agency in the State of Illinois whose powers are outlined under 105 ILCS 5/.

93.     ISBE's decision does not comport with the law.

94.     Plaintiffs desire a judicial review of the decision, a copy of which is attached as Exhibit A and incorporated by reference herein.

95.     The Final Decision and Order should be reversed due to its improper failure to follow the IDEA

96.     WHEREFORE, O.P. prays as follows:

a.      That this Court take jurisdiction over this matter;

b.      That this Court order District 203' to cause the record, including the hearing transcript, of the administrative proceeding in this case to be filed under seal with the Clerk of this Court;

15

c.  Declare that the IHO's decision denies O.P. a free and appropriate public education under the IDEA, reverse the order decision denying parents' claims and relief, hear additional evidence regarding O.P's need for compensatory services and/or remand this cause to the IHO to conduct such hearings as necessary to determine an appropriate compensatory educational program and placement for O.P.;

d.  Award O.P. compensatory education to put her in the position that she would have been had District 203 not denied O.P. her accommodations;

e.  Award O.P. reasonable costs, expenses, attorney's fees, and prejudgment interest as permitted by 42 U.S.C. § 1988, and for all costs, expenses, fees, and pre and postjudgment interest associated with bringing this action; and

f.  For such other and further relief as the court deems just and proper.

## COUNT TWO: SECTION 504 OF THE REHABILITATION ACT

97.    Plaintiffs reallege and incorporate herein by reference the foregoing paragraphs of this Complaint.

98.    O.P. is a qualified individual with a disability within the meaning of 29 U.S.C. § 794(a). She has physical and mental impairments that substantially limit major life activities, including thinking, communicating, and learning. She meets the essential eligibility requirements for participation in District 203's educational programs.

99.    District 203 wrongfully refused to make reasonable accommodations to its education programs to allow O.P. to fully and safely participate in and take advantage of its education programs. The accommodations requested by the parents, including the usage of the DM or FM system, sitting close to the teacher in the front of the room with her right ear facing the

speaker, extended time for tests/graded tasks as needed/requested by Olivia (time and a half), alternate location to take tests and quizzes as needed, use of calculator for math-related activities, study guides when available, preferred scheduling of math in the morning, alternative physical education activities as needed with consideration of Graves' disease did not impose an undue financial or administrative burden or fundamentally alter the nature of District 203's programs.

100.    At all relevant times herein, District 203 had actual knowledge of O.P.'s meaningful exclusion from school and the substantial risk of harm that this created to O.P.

101.    District 203 intentionally excluded O.P. from meaningful participation in its instructional programs, particularly its advanced algebra class. District 203 was deliberately indifferent to O.P.'s unqualified right to meaningful participation in its special education programs.

102.    By refusing to make reasonable accommodations to its special education programs to allow O.P. to participate meaningfully, District 203 discriminated against O.P. on the basis of her disability in violation of Section 504.

103.    WHEREFORE, O.P. prays as follows:

      a.    Declare District 203's conduct unlawfully discriminated against O.P. and violated Section 504;

      b.    Award O.P. such monetary damages as would fully compensate her for her injuries caused by District 203's actions;

      c.    Award O.P. reasonable costs, expenses, attorney's fees, and prejudgment interest as permitted by 42 U.S.C. § 1988, and for all costs, expenses, fees, and pre and postjudgment interest associated with bringing this action; and

      d.    For such other and further relief as the court deems just and proper.

## COUNT THREE: VIOLATION OF THE ILLINOIS HUMAN RIGHTS ACT FOR DISABILITY DISCRIMINATION BY DISTRICT 203 AGAINST O.P.

104.    Plaintiffs reallege and incorporate herein by reference the foregoing paragraphs of this Complaint.

105.    It is the public policy of Illinois to prevent disability discrimination in elementary, secondary, and higher education.

106.    O.P. is a qualified individual with a disability within the meaning of 775 ILCS 5/1-103(I)(1). She has physical and mental impairments that substantially limit major life activities, including thinking, communicating, and learning.

107.    O.P. can access her education with reasonable accommodation.

108.    The accommodation requested by the parents did not impose an undue financial or administrative burden or fundamentally alter the nature of District 203's programs.

109.    District 203 is an Institution of Elementary, Secondary, or Higher Education as defined by 775 ILCS 5/5A-102(A).

110.    Plaintiff is a student as defined by 775 ILCS 5/5A-102(C).

111.    In relevant part, 775 ILCS 5/1-102(A) states it is the public policy of this state "[t]o secure for all individuals within Illinois the freedom from discrimination against any individual because of his or her…disability….and the availability of public accommodations."

112.    District 203 committed a civil rights violation, in violation of 775 ILCS 5/5A-102(A), when it failed to take appropriate disciplinary action against a representative of an institution of elementary, secondary, or higher education when it knew that the representative was discriminating against O.P. due to her disability by allowing administrators and teachers to treat her differently due to her disability, causing her to fail classes.

113.    District 203 wrongfully refused to make reasonable accommodations to its special education programs to allow O.P. to fully and safely participate in her education programs.

114.    District 203 discriminated against Plaintiff O.P. due to her disability by failing her when she could not run in the heat due to her chronic lung disease and Graves' disease.

115.    District 203 discriminated against Plaintiff O.P. by denying Plaintiff O.P. the ability to fill her water bottle in gym class, as recommended by her IEP.

116.    District 203 discriminated against Plaintiff O.P. by allowing Becker to mock Plaintiff O.P. and her usage of the DM/FM System, exacerbating Plaintiff O.P.'s anxiety.

117.    District 203 discriminated against Plaintiff O.P. by not providing her FM/DM system at the beginning of the semester.

118.    District 203 discriminated against Plaintiff O.P. by refusing to allow Plaintiff O.P. the opportunity to change to an advanced algebra class with a different teacher.

119.    At all relevant times herein, District 203 had actual knowledge of O.P.'s meaningful exclusion from school and the substantial risk of harm that this created for O.P.

120.    District 203 intentionally excluded O.P. from meaningful participation in its instructional programs, particularly its advanced algebra class, due to her disabilities. District 203 was deliberately indifferent to O.P.'s unqualified right to meaningful participation in its education programs.

121.    By refusing to provide reasonable accommodation to its education programs to allow O.P. to participate meaningfully, District 203 discriminated against O.P. on the basis of her disability in violation of the IHRA.

122.    As a proximate result of District 203's conduct, Plaintiff has suffered emotional distress such as pain and suffering, mental anguish, inconvenience, humiliation, embarrassment, loss of enjoyment of life, and stress.

123.    WHEREFORE, Plaintiff respectfully requests judgment in his favor and against

District 203, as follows:

    a.  Award Plaintiff such monetary damages as would fully compensate her for her injuries caused by District 203's actions;

    b.  Statutory interest;

    c.  Pre and postjudgment interest;

    d.  Costs and expenses;

    e.  Reasonable attorney fees; and

    f.  Grant any additional relief as the court deems just and proper.

### COUNT FOUR: VIOLATION OF THE ILLINOIS HUMAN RIGHTS ACT FOR DISCRIMINATION FOR ASSOCIATION WITH AN INDIVIDUAL WITH A DISABILITY DISCRIMINATION BY DISTRICT 203 AGAINST ROBYN AND MATT

124.    Plaintiffs reallege and incorporate herein by reference the foregoing paragraphs of this Complaint.

125.    It is the public policy of Illinois to prevent disability discrimination in elementary, secondary, and higher education.

126.    O.P. is a qualified individual with a disability within the meaning of 775 ILCS 5/1-103(I)(1). She has physical and mental impairments that substantially limit major life activities, including thinking, communicating, and learning.

127.    O.P. can access her education with reasonable accommodation.

128.    Robyn is an individual associated with a disability as defined by 775 ILCS 5/1-103(I)(2).

129.    Matt is an individual associated with a disability as defined by 775 ILCS 5/1-103(I)(2).

130.    District 203 is an Institution of Elementary, Secondary, or Higher Education as

defined by 775 ILCS 5/5A-102(A).

131.    Plaintiff is a student as defined by 775 ILCS 5/5A-102(C).

132.    In relevant part, 775 ILCS 5/1-102(A) states it is the public policy of this state "[t]o
secure for all individuals within Illinois the freedom from discrimination against any individual
because of his or her…disability….and the availability of public accommodations."

133.    In relevant part, 775 ILCS 5/1-103(I)(2) states, "[d]iscrimination based on
disability includes unlawful discrimination against an individual because of the individual's
association with a person with a disability."

134.    District 203 committed a civil rights violation, in violation of 775 ILCS 5/5A-
102(A), when it did not take Robyn and Matt's concerns regarding their advocacy for O.P. and the
denial of her accommodations seriously due to the fact they are associated with an individual with
a disability.

135.    At all relevant times herein, District 203 had actual knowledge of O.P.'s meaningful
exclusion from school and the substantial risk of harm that this created for O.P.

136.    District 203 was deliberately indifferent to Parents' unqualified right to advocate
for O.P.'s meaningful participation in its education programs.

137.    By refusing to make reasonable accommodations to its education programs to allow
Parents to advocate for O.P.'s meaningful participation in education programs, District 203
discriminated against O.P. on the basis of fact their association with an individual with a disability.

138.    As a proximate result of District 203's conduct, Plaintiffs suffered emotional
distress such as pain and suffering, mental anguish, inconvenience, humiliation, embarrassment,
loss of enjoyment of life, and stress.

139.    WHEREFORE, Plaintiffs Matt and Robyn respectfully request judgment in his

favor and against District 203, as follows:

     a.  Award Plaintiff such damages as would fully compensate them for their injuries caused by District 203's actions;

     b.  Statutory interest;

     c.  Pre and postjudgment interest;

     d.  Costs and expenses;

     e.  Reasonable attorney fees; and

     f.  Grant any additional relief as the court deems just and proper.

## COUNT FIVE: VIOLATION OF THE AMERICANS WITH DISABILITY ACT FOR DISABILITY DISCRIMINATION BY DISTRICT 203 AGAINST O.P.

140.    Plaintiffs reallege and incorporate herein by reference the foregoing paragraphs of this Complaint.

141.    Plaintiff O.P. is, and was at all times pertinent hereto, a qualified individual within the meaning of 42 U.S.C. § 12102(1) in that she has hyperthyroidism, Graves' Disease, Attention Deficit Hyperactivity Disorder ("**ADHD**"), anxiety, and hearing loss in her left ear.

142.    Plaintiff O.P.'s hyperthyroidism, Graves' Disease, Attention Deficit Hyperactivity Disorder ("**ADHD**"), anxiety, and hearing loss in her left ear is a disability as defined under 42 U.S.C. § 12102(1) as it substantially limits one or more major life activities of Plaintiff; a record of such an impairment; and/or District 203 perceives her to have a disability.

143.    District 203 is a place of public accommodation under the Americans with Disabilities Act.

144.    O.P. can access her education with reasonable accommodation.

145.    The accommodations requested by Parents on behalf of O.P. did not impose an undue financial or administrative burden or fundamentally alter the nature of District 203's

programs.

146.    District 203 committed a civil rights violation, in violation of the Americans with Disability Act, when it failed to take appropriate disciplinary action against a representative of an institution of elementary, secondary, or higher education when it knew that the representative was discriminating against O.P. due to her disability by allowing administrators and teachers to treat her differently due to her disability, causing her to fail classes.

147.    District 203 wrongfully refused to make reasonable accommodations to its special education programs to allow O.P. to fully and safely participate in her education programs.

148.    District 203 discriminated against Plaintiff O.P. due to her disability by failing her when she could not run in the heat due to her chronic lung disease and Graves' disease.

149.    District 203 discriminated against Plaintiff O.P. by denying Plaintiff O.P. the ability to fill her water bottle in gym class, as recommended by her IEP.

150.    District 203 discriminated against Plaintiff O.P. by allowing Becker to mock Plaintiff O.P. and her usage of the DM/FM System, exacerbating Plaintiff O.P.'s anxiety.

151.    District 203 discriminated against Plaintiff O.P. by not providing her FM/DM system at the beginning of the semester.

152.    District 203 discriminated against Plaintiff O.P. by refusing to allow Plaintiff O.P. the opportunity to change to an advanced algebra class with a different teacher.

153.    At all relevant times herein, District 203 had actual knowledge of O.P.'s meaningful exclusion from school and the substantial risk of harm that this created for O.P.

154.    District 203 intentionally excluded O.P. from meaningful participation in its instructional programs, particularly its advanced algebra class, due to her disabilities. District 203 was deliberately indifferent to O.P.'s unqualified right to meaningful participation in its education

programs.

155.     By refusing to make reasonable accommodations to its special education programs to allow O.P. to participate meaningfully, District 203 discriminated against O.P. on the basis of her disability in violation of the Americans with Disability Act.

156.     As a proximate result of District 203's conduct, Plaintiff has suffered emotional distress such as pain and suffering, mental anguish, inconvenience, humiliation, embarrassment, loss of enjoyment of life, and stress.

157.     WHEREFORE, Plaintiff respectfully requests judgment in his favor and against District 203, as follows:

    a.  Award Plaintiff such damages as would fully compensate her for her injuries caused by District 203's actions;

    b.  Punitive damages;

    c.  Statutory interest;

    d.  Pre and postjudgment interest;

    e.

    f.  Costs and expenses;

    g.  Reasonable attorney fees; and

    h.  Grant any additional relief as the court deems just and proper.

## COUNT SIX: VIOLATION OF THE AMERICANS WITH DISABILITIES ACT FOR ASSOCIATION WITH AN INDIVIDUAL WITH A DISABILITY DISCRIMINATION BY DISTRICT 203 AGAINST ROBYN AND MATT

158.     Plaintiffs reallege and incorporate herein by reference the foregoing paragraphs of this Complaint.

159.     Plaintiff O.P. is, and was at all times pertinent hereto, a qualified individual within

24

the meaning of 42 U.S.C. § 12102(1) in that she has hyperthyroidism, Graves' Disease, Attention Deficit Hyperactivity Disorder ("***ADHD***"), anxiety, and hearing loss in her left ear.

160.    Plaintiff O.P.'s hyperthyroidism, Graves' Disease, Attention Deficit Hyperactivity Disorder ("***ADHD***"), anxiety, and hearing loss in her left ear is a disability as defined under 42 U.S.C. § 12102(1) as it substantially limits one or more major life activities of Plaintiff; a record of such an impairment; and/or District 203 perceives her to have a disability.

161.    Parents are associated with O.P., who District 203 knows has a disability.

162.    District 203 is a place of public accommodation under the Americans with Disabilities Act.

163.    Pursuant to the ADA, it is discriminatory to exclude or otherwise deny services or opportunities to an individual or entity because of the known disability of an individual with whom the individual or entity is known to have a relationship or association.

164.    O.P. can access her education with reasonable accommodation.

165.    The accommodations requested by Parents on behalf of O.P. did not impose an undue financial or administrative burden or fundamentally alter the nature of District 203's programs.

166.    District 203 committed a civil rights violation, in violation of the Americans with Disability Act, when it failed to take appropriate disciplinary action against a representative of an institution of elementary, secondary, or higher education when it knew that the representative was discriminating against O.P. due to her disability by allowing administrators and teachers to treat her differently due to her disability, causing her to fail classes.

167.    District 203 committed a civil rights violation, in violation of 775 ILCS 5/5A-102(A), when it did not take Robyn and Matt's concerns regarding their advocacy for O.P. and the

denial of her accommodations seriously due to the fact they are associated with an individual with a disability.

168.    At all relevant times herein, District 203 had actual knowledge of O.P.'s meaningful exclusion from school and the substantial risk of harm that this created for O.P.

169.    District 203 was deliberately indifferent to Parents' unqualified right to advocate for O.P.'s meaningful participation in its education programs.

170.    By refusing to make reasonable accommodations to its education programs to allow Parents to advocate for O.P.'s meaningful participation in education programs, District 203 discriminated against O.P. on the basis of fact their association with an individual with a disability.

171.    As a proximate result of District 203's conduct, Plaintiffs suffered emotional distress such as pain and suffering, mental anguish, inconvenience, humiliation, embarrassment, loss of enjoyment of life, and stress.

172.    WHEREFORE, Plaintiff respectfully requests judgment in his favor and against District 203, as follows:

    a.    Award Plaintiff such damages as would fully compensate her for her injuries caused by District 203's actions;

    b.    Punitive damages;

    c.    Pre and postjudgment interest;

    d.    Statutory interest;

    e.    Costs and expenses;

    f.    Reasonable attorney fees; and

173.    Grant any additional relief as the court deems just and proper.

## COUNT SEVEN: VIOLATION OF THE ILLINOIS CIVIL RIGHTS REMEDIES RESTORATION ACT

26

174.    Plaintiffs incorporate the allegations listed above by reference.

175.    Plaintiff O.P. is an individual entitled to protection under the Americans with Disabilities Act.

176.    Plaintiff O.P. is an individual entitled to protection pursuant to 775 ILCS 60/15.

177.    Defendants above-mentioned actions are violations of Plaintiff's Civil Rights, as defined under 775 ILCS 60/15.

178.    WHEREFORE, Plaintiffs pray that this Court enter an ORDER:

    a.  Declaring Defendant's actions constitute civil rights violations under 775 ILCS 60/5.

    b.  Awarding Plaintiff O.P. such damages as would fully compensate her for her injuries caused by Defendant's civil rights violations, including compensatory and punitive damages, emotional pain and suffering, and other nonmonetary losses that may determined by a jury or a court sitting without a jury, but in no case less than $4,000;

    c.  Awarding Plaintiff O.P. her costs, expenses, and attorney's fees; and

    d.  Granting any additional relief as the Court deems just and proper

## JURY DEMAND

Pursuant to Rule 28 of the Federal Rules of Civil Procedure, Plaintiffs respectfully request a trial by jury of all issues triable by a jury.

Dated: March 8, 2024

                Respectfully submitted,

                */s/ Michelle K. Faron*
                Michelle K. Faron
                Thomas E. Kennedy, III,
                Sarah Jane Hunt
                Ellen Bruntrager
                KENNEDY HUNT, P.C.
                4500 W Pine Blvd
                St. Louis, MO 63108

Tel: (314) 872-9041
Fax: (314) 872-9043
tkennedy@kennedyhuntlaw.com
sarahjane@kennedyhuntlaw.com
michelle@kennedyhuntlaw.com
ellen@kennedyhuntlaw.com

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that a true and correct copy of the foregoing was served via the United States District Court for the Southern District of Illinois' CM/ECF electronic filing system on March 8, 2024, to the below listed counsel of record:

Krystin B. Beasley
Assistant Attorney General
Metro East Office
201 West Point Dr., Suite 7
Belleville, IL 62226
*Attorney for Dr.  Tony Sanders*

Kerry B. Banahan
James E. Godfrey, Jr.
211 N. Broadway, Ste. 2500
St. Louis, MO 63105
*Attorneys for Defendant O'Fallon Township High School*

*/s/ Michelle K. Faron*