IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| ROBYN PFERSHY and MATTHEW PFERSHY, on behalf of their minor daughter O.P. and in their individual capacities, | ) ) ) | |
| | ) | |
| Plaintiffs, | ) | Case No.   23-cv-3515-RJD |
| | ) | |
| v. | ) | |
| | ) | |
| O'FALLON TOWNSHIP HIGH SCHOOL DISTRICT 203, | ) ) | |
| | ) | |
| Defendant. | ) | |

**ORDER**

**DALY, Magistrate Judge:**

Plaintiffs filed this suit individually and on behalf of their minor child, O.P., alleging that Defendant O'Fallon Township High School District 203 violated the following federal statutes: (1) the Individuals with Disabilities Education Act ("IDEA"); (2) Section 504 of the Rehabilitation Act; and (3) the Americans with Disabilities Act.  Doc. 1.  Plaintiffs also allege that Defendant violated the Illinois Human Rights Act ("IHRA").  *Id*.  This Court has subject matter jurisdiction of Plaintiffs' federal law claims and exercises supplemental jurisdiction over Plaintiffs' IHRA claim. Plaintiff's First Amended Complaint alleges that certain teachers harassed O.P., discriminated against O.P., and failed to accommodate O.P.'s disabilities.  *See*, *e.g*., Doc. 40, ¶¶35, 39.  This matter comes before the Court on the parties' competing Motions for Summary Judgment or Judgment on the Pleadings of Plaintiffs' IDEA claim.  Docs. 81, 82, 106, 107.

**Administrative Record**

O.P. attended ninth grade at O'Fallon Township High School, District 203 ("the District" during the 2022-2023 school year.  Doc. 33, p. 76.  O.P. was eligible for special education and

related services under the IDEA. *Id*. Her diagnoses include hypothyroidism, Graves' disease, attention deficit hyperactivity disorders, anxiety, and hearing loss. *Id*. She has chronic lung problems related to her premature birth. *Id*., p. 941. The meeting for O.P.'s 2022-2023 IEP took place in March 2022.

In March 2023, Plaintiffs submitted a Due Process Complaint to the State of Illinois for the District's alleged denial of accommodations to O.P. Doc. 33, p. 6-13. The due process hearing was conducted in September 2023 and the Independent Hearing Officer ("IHO") issued a decision denying the parents' claim on September 29, 2023. Doc. 1-1.

**Accommodations for Graves' disease**

Robin Pfershy testified that O.P.'s Graves disease caused her to sweat excessively and become lightheaded and faint if she exerted "herself too hard." *Id*., p. 997-98. Robin Pfershy further testified that "we think hot is extremely hot to her" and that O.P. took a beta blocker because she had a "naturally high" heart rate. *Id*., p. 998-99. O.P.'s 2022-2023 Individual Education Plan ("IEP") included "adaptations in PE as needed due to Graves disease-ability to drink water as needed to address symptoms." *Id*., p. 518.

Ms. Walsh taught O.P. in physical education. Doc. 102, p. 9, ¶29. She testified that every student could keep a water bottle with them during physical education. Doc. 33, p. 1042. O.P.'s first progress report in the 2022-2023 school year from Ms. Walsh reflected that four points were deducted from O.P. for "not jogging in the appropriate time." Ms. Walsh testified that "when I asked why, there was no given answer other than they—they did not want to jog...I asked if there was…if she needed to go to the nurse, no. So four points were deducted." *Id*., pp. 1042-43. On September 7, 2022 O.P. went to the nurse's office, "voicing…that [she] was overheated" from

Page **2** of **14**

playing kickball.  *Id*., pp. 611, 1152-53.  On September 9, 2022, O.P.'s IEP was amended as follows:

> Accommodated or alternate PE activities as necessary with consideration of Graves disease diagnosis.  O. is familiar with her symptoms and knows when they begin to flare and the limits that she is working with.  Typically, she prefers to begin or attempt an activity, but will continue to communicate with the teacher when is not able to.  As such, she will be able to walk or be provided an alternate activity to earn full participation points that day.

*Id*., p. 1045-46.  Ms. Walsh also credited the four points that were previously deducted.  *Id*., p. 1046.

**Accommodations for hearing loss and anxiety**

Robin Pfershy testified that O.P's anxiety causes her to "catastrophize", meaning "a little problem becomes a big problem."  *Id*., p. 958.  Plaintiffs reported that O.P. has significant test anxiety.  *Id*., pp. 969-70.  Her 2022-2023 IEP allowed her to use a calculator and an "alternate location to take tests and quizzes as needed/requested" and "extended time to take tests/graded tasks as needed."  *Id*., p 518.  She was also allowed "preferred scheduling of math in the morning."  *Id*.  One of O.P.'s goals in her IEP was to "identify and apply coping strategies to manage stress in the school environment."  *Id*., p. 515.  The IEP team determined that O.P. should be placed in Introduction to Algebra.  Doc. 108, p. 3, ¶6.  At the Pfershys' request, O.P. was placed in Advanced Algebra I.  *Id*.; Doc. 33, p. 81.

The District's audiologist, Kristen Chumbley, testified that her duties include selecting and ordering hearing equipment for students, implementing the equipment, doing any kind of necessary training, and trouble shooting equipment.  Doc. 33, p. 1074.  The District ordered O.P.'s DM equipment in July 2022.  *Id*., p. 1340.  Typically, DM systems arrive within 1-2 weeks

after the District orders them.   *Id*., p. 1341.

August 11, 2022 was the first day for students in the District's 2022-2023 school year.   *Id*., p. 76.   O.P.'s DM system arrived at the District on August 15, 2022.   *Id*., p. 1341.   Ms. Chumbley "picked up the equipment" from the high school on August 17, 2022 and programmed it.   *Id*., p. 1079.   Then, on August 19, 2022, Ms. Chumbley fitted the equipment to O.P. and showed O.P. how to use it, charge it, and clean it.   *Id*., p. 1079-80.   August 22, 2022 was the first day that O.P. was able to use the DM system in her classes.   Doc. 102, p. 8, ¶19.   The District did not notify Matt and Robin Pfershy that O.P.'s DM system was not available for the first week of school.   Doc. 33, p. 1342.   Ms. Chumbley did not provide any training to the staff regarding O.P.'s DM system.   *Id*., p. 1083-84.

On November 1, 2022, Ms. Chumbley received an email from O.P.'s Advanced Algebra teacher, Ms. Becker.   *Id*., p. 1379.   Ms. Becker reported that O.P. "has not had it in class the last week or so."   *Id*., p. 1379.   On November 7, 2022, O.P. reported to the school nurse that she was having trouble with her DM system.   *Id*., p. 1384.   O.P. called her mother from the nurse's office and asked her to contact the audiologist.   *Id*., p. 1384.

O.P.'s DM system could be used on "tabletop mode" but then it would also transmit "all the noise in the classroom" to O.P.'s receiver.   *Id*., p. 1097.   Ms. Lodes, O.P.'s resource study skill teacher, testified that she wore the DM system in class but sometimes placed it on the podium because "it clinks against things."   *Id*., p. 1178.   Ms. Lodes spoke with Ms. Becker who "said she puts it on her podium or her stand where she teaches from."   *Id*., p. 1177.   Ms. Becker testified that she always wore the system around her neck when teaching.   *Id*., p. 1248.   She further testified that she had a podium/cart that was "pretty high" that she taught from, and she asked O.P.

if she could set the microphone on top of her podium instead of around her neck. *Id.*, p. 1248. O.P. indicated "that she didn't prefer that"; Ms. Becker testified that, thereafter, she "kept [the microphone] hanging down" around her neck. *Id.*, p. 1249. O.P. sent her mother a text message that stated Ms. Becker "took off the microphone halfway through the class" after the conversation between O.P. and Ms. Becker regarding O.P.'s preference for Ms. Becker to wear the microphone on her neck. *Id.*, p. 89. Ms. Becker testified that there were occasions where she would take the microphone off after lecturing and "accidentally forget[] to put it back [when] I would redirect [the students] the last two or three minutes." *Id.*, p. 1246.

O.P. testified that she "would have to ask [Ms. Becker] to wear the microphone sometimes." *Id.*, p. 892. On one occasion, Ms. Becker said "Oh, well do I not talk loud enough?" *Id.* This conversation happened in front of other students. *Id.*

Matt and Robin Pfershy attended O.P.'s IEP meeting on November 10, 2022. *Id.*, pp. 977-78. Robin Pfershy testified that at that meeting, she told school administrators that Ms. Becker intimidated O.P. and made her nervous; O. P. reported Ms. Becker slamming books on her desk and threatening to give the entire class "pink slips" because a few students did not complete their homework. *Id.*, pp. 964-65, 978. Robin Pfershy testified that she made it clear that she wanted O.P. "out of Ms. Becker's class" and into the other Advanced Algebra class, but the administrators "reassured us that O. was in the right class" and Ms. Becker "doesn't have the authority to pink slip the entire class." *Id.*, p. 978-79. O.P. received a C minus in Ms. Becker's class for the first semester. *Id.*, p. 1256.

O.P. saw a nurse practitioner for a follow-up visit regarding her ADHD on January 31, 2023. In a section titled "Present Concerns", the nurse practitioner made the following note:

> O.P. has been having recent increased anxiety.  It was a big transition back into in person school as well as high school. This has not improved as she has settled into the school year.  She often perseverates on being tardy at school, completing assignments and school related tasks. This was once well controlled on the Prozac and currently is not well controlled.

*Id.*, p. 462.

Matt and Robin Pfershy met with administrators again on February 14, 2023.  *Id.*, p. 980. O.P. was present, along with Dr. Coley, who was the Associate Director of Special Services for the District.  *Id.*, p. 1198.  Dr. Coley recalls a meeting with O.P., her parents, and Ms. Becker in February 2023.  *Id.*, p. 1205.  She recalls that O.P. "said that she was having a hard time with the math work because Ms. Becker wasn't wearing her [DM] system."  *Id.*, p. 1207.  Dr. Coley testified that Ms. Becker reported some type of neck injury that was aggravated by the DM system. and recalls Ms. Becker saying that "it was hurting her neck, so she decided she'd put it on the podium….if it absolutely needed to be on her neck, then she would put it on her neck."  *Id.*  The District denied the Pfershys' request to move O.P. to an Advanced Algebra class taught by a different teacher, but offered to switch her to Introduction to Algebra.  *Id.*, pp. 980-81.

In the middle of the third quarter, O.P. switched from Advanced Algebra with Ms. Becker to Introduction to Algebra with Mr. Muniz.   Doc. 108, pp. 13-14, ¶56.  Mr. Muniz testified that O.P. was a "solid B" student in his class and he thought Introduction to Algebra was the correct placement for her.  *Id.*, p. 1289-90.

### Applicable Law and Standard of Review

As a requirement for accepting federal funding to educate students with disabilities, schools in Illinois must ensure that those students receive "a free appropriate public education."  20 U.S.C.

§1412(a); *N.T. v. Galesburg Cmty. Unit Sch. Dist.*, 174 F. 4th 1044, 1049 (7th Cir. 2026). A free appropriate public education is one that is "reasonably calculated to enable a child to make progress appropriate in light of the child's circumstances." *Endrew F. ex. rel. Joseph F. v. Douglas Cnty. School Distr. RE-1*, 580 U.S. 386, 403 (2017).   A parent who believes his/her child has not been provided a free appropriate public education may participate in an administrative due process hearing in which an impartial hearing officer ("IHO") will reach a decision on whether the school district has complied with the IDEA.   20 U.S.C. §1415.

If either the school or the parents disagree with the IHO's decision, they may sue in state or federal court.   20 U.S.C. §1415(i)(2)(A).   This Court "shall receive the records of the administrative hearing…hear additional evidence at the request of a party…and base its decision on the preponderance of the evidence."   *N.T.*, 174 F.4th at 1050, citing 20 U.S.C. §1415(i)(2)(C). Plaintiffs (as the party challenging the outcome of the administrative hearing) bear the burden of proof.   *Id*. (*citing Alex. R. ex. rel. Beth R. v. Forrestville Valley Cmty. Unit Sch. Dist. No. 221*, 375 F.3d 603, 611 (7th Cir. 2004).   In cases such as this one where there is "no new evidence and [the Court] relies solely on the administrative record", the Court reviews the IHO's findings to determine whether they are supported by substantial evidence and whether the IHO made any clear errors.   *Id*. (*citing Alex R.*, 375 F.3d at 612 and *Sch. Dist. Of Wis. Dells v. Z.S.*, 295 F.3d 671, 674-75 (7th Cir. 2002).   Though the parties are asking the Court for "summary judgment" in their competing motions, the standard of review is different than in a typical motion under Federal Rule of Civil Procedure 56.   *Todd v. Duneland Sch. Corp.*, 299 F.3d 899, 904 (7th Cir. 2002).   The Court determines whether Plaintiffs have established through a preponderance of the evidence that O.P. was denied an appropriate public education.   *Id*.   Genuine issues of material fact do not

Page **7** of **14**

prohibit the undersigned from reaching a decision based on the administrative record.   *Id*.

## Discussion

Plaintiffs contend that the IHO's decision was "based on legal error and unsupported factual findings."   Doc. 82, p. 9.   They argue that she "incorrectly adopted a 10-day grace period" for implementation of the DM system and that she should have considered whether the District "materially failed to implement the DM system."   They also contend that the IHO improperly discounted O.P.'s "disability-related anxiety" and minimized the "overheating incident in PE."

As a preliminary matter, Plaintiffs urge this Court to give limited deference to the IHO's findings because she did not read the multi-day transcript of the hearing before issuing her decision.   No case law cited by Plaintiffs supports this argument.   The IHO must thoroughly and completely review the evidence, and Plaintiffs fail to identify any evidence ignored by the IHO. When the IHO issued her decision, she noted that reviewing the transcript of the hearing was not necessary because her decision was based on notes and recollection of the testimony provided at the hearing.

### DM System Implementation

Plaintiffs contend that "the IHO incorrectly adopted a '10-day grace period' for implementation of essential IEP services." This argument misstates the IHO's decision.   First, she addressed whether the parents were notified within 10 days that O.P. did not have her DM system, referencing an Illinois law that requires notice to a student's parents if a service listed in the student's IEP is not provided within 10 school days.   Doc. 1-1, p. 19.   It seems clear to the Court that the reason the IHO addressed this issue was because at the due process hearing, counsel for the Pfershys argued repeatedly that "deprivation of the [DM] system without notice was a

procedural violation." Doc. 33, pp. 85, 1392, 1398. Noting that school started on August 11, 2022 and O.P. started using her DM system on August 22, 2022, the IHO found that less than 10 school days passed before O.P. started using her DM system and therefore notice to the Pfershys was not required. Doc. 1-1, p. 19.

The IHO then considered whether O.P. academically regressed when she did not have access to the DM system, and noted that O.P. "earned 100% scoring in math" from August 15-19, 2022. *Id*. The IHO explained that she only considered O.P.'s academic performance in math because the Pfershys did not contend that O.P. regressed in any other classes. Neither the Due Process Complaint nor the Pfershys' closing statement to the IHO nor the Pfershys' "Post-Hearing Suggestions" indicated that O.P. experienced any difficulties in any class related to the DM system other than Ms. Becker's Advanced Algebra. Doc. 33, pp. 6-13, 86-89, 1394-99.

Plaintiffs argue that they do not have to prove "serious educational harm" to establish an IDEA violation. To support this argument, Plaintiffs point to a district court opinion that makes such a finding in a case where seven months passed without the school district providing agreed upon services to a student, and "the record was devoid of any practical difficulty encountered by [the school district] that would have prevented implementation of the compensatory services." *Board of Educ. of City of Chicago v. Illinois Bd. of Educ*., 741 F. Supp. 2d 920, 925 (N.D. Ill. 2010). The district court expressed its concern that a school district might "draft a detailed and elegant IEP, choose to ignore parts of it, and resist any remedy unless the child and his parents could show serious educational harm." *Id*. (internal quotations omitted). No similar circumstances exist here. The record reflects that the District ordered O.P.'s system at the time such orders are normally made, and because of circumstances outside the District's control, the

Page **9** of **14**

system did not arrive prior to the start of the 2022-2023 school year.

Moreover, whether Plaintiffs must prove serious educational harm is not necessarily the point.   To the IHO, they had to prove that O.P. was denied an appropriate public education. *Schaffer ex rel. Schaffer v. Weast*, 546 U.S. 49 (2005).   It is difficult to say that O.P. was denied an appropriate education because she did not have DM System during the first seven days of school when she received perfect grades in Advanced Algebra (the only class in which Plaintiffs contend she regressed) during that time.

The Ninth Circuit Court of Appeals has held that "when a school district does not perform exactly as called for by the IEP, the district does not violate the IDEA unless it is shown to have materially failed to implement the child's IEP."  *Van Duyn ex. rel. Van Duyn v. Baker School Dist*. 5J, 502 F.3d 811, 815 (9th Cir. 2007).   A material failure is "more than a minor discrepancy between the services provided to a disabled child and those required by the IEP."  *Id*.   Plaintiffs rely heavily on the *Van Duyn* opinion to support their argument that the IHO clearly erred because she did not analyze whether the School District materially failed to implement O.P.'s IEP.

While the IHO did not specifically use the terms "materially failed" or "material failure," nor did she refer to the *Van Duyn* opinion in the Conclusions of Law section, she apparently considered all evidence available to her regarding how often O.P. did not have access to the DM system and how that affected O.P.   In addition to considering O.P.'s academic performance from August 11-19, 2022, the IHO also considered the Pfershys' contention that Ms. Becker refused to wear the microphone and complained about its use to O.P.  Doc. 1-1, pp. 19, 22.   The IHO weighed testimony by Ms. Lodes, Ms. Becker, and O.P. and found that O.P. "disliked [Ms. Becker] and her teaching methods" and "any academic regression [O.P] suffered in attaining a C- in

Page **10** of **14**

Advanced Algebra was due to her test anxiety and failure to fully grasp the material." *Id*., p. 22-23.   Plaintiffs fail to point the Court to any other evidence in the record that the IHO could have considered in determining whether the occasions that O.P. could not/did not use the DM system constituted a "material failure" to implement the IEP.

Also related to the DM system implementation, Plaintiffs argue that the IHO applied the incorrect legal standard at the hearing.   Plaintiffs rely on the Ninth Circuit's reasoning in *M.C. v. Antelope Valley Union High School Dist*., 858 F. 3d 1189 (9th Cir. 2017).   In the *Antelope Valley* case, parents pursued a due process hearing, believing that their son's IEP did not include adequate therapy hours.   *M.C.*, 858 F.3d at 1197-98.   Unbeknownst to the parents, the school had discovered that the therapy hours listed in the son's IEP were a mistake and increased those hours, to the son's benefit.   *Id*. at 1195.   Counsel for the school district "buried [the amended IEP] in document production" and the parents were not aware of the amendment until the first day of the due process hearing.   *Id*. at 1197.   The school's failure to inform the parents of the amended IEP was a per se procedural violation, and the school's act of concealing the amendment from the parents made it impossible for the parents to assess the reasonableness of those services prior to the due process hearing.   *Id*.   Under these circumstances, the Ninth Circuit held that the burden shifted to the school at the due process hearing to show that the services provided to the students were appropriate.   *Id*. at 1200.

Here, there is no per se procedural violation of the IDEA. As discussed above, the IHO found that the school district was not required to notify the parents of that O.P.'s DM system was not available to O.P. until August 22, 2022.   Plaintiffs argue that "the District failed to disclose the extent of O.P.'s missed auditory access."   The Court notes that O.P.'s parents knew the DM

Page **11** of **14**

system was malfunctioning in November 2022 and apparently resolved via cleaning.   Doc. 33, p. 1384.   While the record includes conflicting testimony regarding instances where a teacher forgot to speak into the microphone, or put the microphone on a podium instead of around her neck, the IHO considered that testimony and found that these issues "only presented [a problem] with respect to [Ms. Becker]" and "it is apparent from the record that [O.P.] disliked [Ms. Becker] and her teaching methods….Parents fail to prove that there was a procedural inadequacy which caused a deprivation of educational benefit."   Doc. 1-1, p. 22.   Similarly, while Plaintiffs disagree with the IHO's reasoning, they have failed to establish in this Court that the standards used by the IHO to reach her decision were clearly erroneous.

**Anxiety Accommodations**

Plaintiffs argue that the IHO "improperly discounted O.P.'s disability related anxiety despite uncontroverted evidence."   This argument is not well-developed, as it seems that Plaintiffs are arguing that O.P.'s anxiety was not addressed in her IEP; however, Plaintiffs are insistent that this case is about "implementation" of the IEP (as opposed to whether the IEP was appropriate). Doc. 82, p. 2.   Plaintiffs fail to address which provision of the IEP was not properly implemented. In any event, Plaintiffs contend that the IHO rejected their argument that O.P.'s anxiety "interfered with her ability to access instruction in her assigned environment."   The IHO's decision did not discount her anxiety but instead, after hearing testimony from O.P.'s math teachers, attributed it to placement in the Advanced Algebra class "that was not suited to her math background."   Doc. 1-1, p. 23.

Plaintiffs fault the IHO for stating that "the evidence does not support Parents' allegations that Student lost weight, lost her appetite, or was losing sleep."   The Court acknowledges that the

Page **12** of **14**

Pfershys provided testimony to support their claim that O.P. lost weight, appetite, and sleep, and obviously such testimony is evidence.   Nonetheless, it appears that when the IHO said "the evidence does not support" Plaintiffs' argument, the IHO was referring to the January 2023 medical record provided by Plaintiffs.  *Id.*   The medical record referred to increased anxiety related to moving to high school and in-person instruction and also referred to O.P. sleeping nine hours a night (but restlessly) and having "some decreased appetite during the day, but overall doing good."  *Id.*; Doc. 33, p. 462.

**P.E. Accommodations**

Plaintiffs argue that the District failed to materially implement accommodations for O.P.'s Graves disease because Ms. Walsh "deducted participation points for her inability to jog and failed to modify activities until after O.P. experienced a serious overheating episode that required the nurse to document symptoms and call her parents to pick her up." This argument is contradicted by the evidence in the record (and lack thereof).   Ms. Walsh testified that she deducted participation points because O.P. said she "did not want to jog" and then later credited O.P. those points after the IEP was amended to include that O.P. "will continue to communicate with the teacher when [she] is not able to [perform an activity].….she will be able to walk or be provided an alternate activity to earn full participation points that day."

Moreover, Plaintiffs do not cite any information in the record regarding the events leading up to O.P. reporting to the nurse that she was overheated from playing kickball; it appears that the kickball episode did not occur on the same day as O.P.'s participation points were docked.   The IHO (and the Court) could only speculate as to whether the District denied accommodations to O.P. prior to her report of overheating.   Robin Pfershy testified that O.P. overheats even if she is

Page **13** of **14**

not engaged in physical activity.  *Id*., pp. 998-99.

### Conclusion

Plaintiffs have not established, through a preponderance of the evidence, that the District denied O.P. a free and appropriate public education in the 2022-2023 school year.  Plaintiffs' Motion (Docs. 81 and 82) is DENIED and Defendant's Motion (Docs. 106 and 107) is GRANTED. Plaintiffs' IDEA claim against Defendant is therefore DISMISSED WITH PREJUDICE.  The Clerk of Court is directed to enter judgment accordingly at the close of the case.

**IT IS SO ORDERED.**

**DATED: August 5, 2026**

_____
**Hon. Reona J. Daly**
**United States Magistrate Judge**

Page **14** of **14**